[Civ. No. 26220. Second Dist., Div. Four. May 29, 1962.]

ABSTRACT INVESTMENT COMPANY, Plaintiff and Respondent, v. WILLIAM D. HUTCHINSON, Defendant and Appellant.

*Assigned by Chairman of Judicial Council.

Miller & Malone and Loren Miller for Defendant and Appellant.

Stanley Mosk, Attorney General, Howard H. Jewel, Assistant Attorney General, Manly D. Calof, Deputy Attorney General, A. L. Wirin, Richard J. Kamins, R. Milton Smith and Gerald L. Rosen as Amici Curiae on behalf of Defendant· and Appellant.

Fred W. Chase for Plaintiff and Respondent.

· Lackman & Lackman, Samuel Lackman and Lawrence H.· Lackman as Amici Curiae on behalf of Plaintiff and Respondent.

BURKE, P. J.—Should the court receive evidence on a tenant's affirmative defense that his tenancy is being terminated solely because of his race?

This is the question posed in this proceeding in unlawful detainer in the Municipal Court, Santa Anita Judicial District. The plaintiff, Abstract Investment Co., instituted the action for the purpose of obtaining possession of certain premises leased to defendant under a month-to-month tenancy. Defendant's answer acknowledged, in effect, that a proper notice to quit had been served and that plaintiff was entitled to possession except for the facts alleged in defendant's affirmative defenses. The trial court refused to admit any evidence on the allegations of the affirmative defenses and rendered judgment in favor of plaintiff.

On appeal, the appellate department of the superior court in a split decision reversed the judgment of the trial court on the ground that it was error to exclude evidence under the affirmative defenses. In its opinion the appellate department held that if the allegations of the affirmative defenses were substantiated by competent evidence the judgment would violate the defendant's constitutional rights to equal protection of the law under the Fourteenth Amendment of the Constitution of the United States.

The case was certified, on the superior court's own motion,[1] to the District Court of Appeal, which latter court ordered it transferred for a hearing and decision.

 In this appeal we are concerned with whether or not the issues tendered by the second and third affirmative defenses may be recognized in an unlawful detainer proceeding. In those defenses defendant contends that his eviction

---

[1]Pursuant to rules 62 and 63 of the California Rules of Court [formerly Rules on Appeal].

was sought solely on the ground of his race and that the real reason for his eviction was the fact that he was a Negro. Thus, we must determine: Does judicial enforcement of the eviction of a tenant because of race violate the tenant's rights guaranteed by the Fourteenth Amendment of the Constitution of the United States and by article I, section 13 of the Constitution of the State of California?

■ For the purposes of this appeal we must take as true the allegations of the affirmative defenses as to the sole motivation for plaintiff's eviction of its tenant.

The relief sought by plaintiff in the unlawful detainer action is judicial action enforcing its effort to evict the tenant and recover possession of the premises. The Fourteenth Amendment of the United States Constitution provides in part that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

■ Section 13 of article I of the state Constitution provides in part that no person shall ". . . be deprived of life, liberty, or property without due process of law. . . ." This provision has been held to be identical in scope and purpose with the Fourteenth Amendment of the Federal Constitution. (*Manford* v. *Singh*, 40 Cal.App. 700 [181 P. 844].)

In the case of *Shelley* v. *Kraemer*, 334 U.S. 1 [68 S.Ct. 836, 92 L.Ed. 1161, 3 A.L.R.2d 441], the Supreme Court of the United States declared (p. 13), ". . . the principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful." Thus the court concluded that the restrictive covenants against use or occupancy of real property by any person by reason of his race could not be regarded by themselves as violative of any rights guaranteed by the Fourteenth Amendment. The court stated (p. 13), "So long as the purposes of those agreements are effectuated by voluntary adherence to their terms, it would appear clear that there has been no action by the State and the provisions of the Amendment have not been violated. [Citing case.]" The Supreme Court further declared (p. 14), "That the action of state courts and of judicial officers in their

official capacities is to be regarded as action of the State within the meaning of the Fourteenth Amendment, is a proposition which has long been established by decisions of this Court." The Supreme Court held that enforcement by state courts of the restrictive covenant agreements constituted state action. The court noted that (pp. 20-21) ". . . freedom from discrimination by the States in the enjoyment of property rights was among the basic objectives sought to be effectuated by the framers of the Fourteenth Amendment. That such discrimination has occurred in these cases is clear. Because of the race or color of these petitioners they have been denied rights of ownership or occupancy enjoyed as a matter of course by other citizens of different race or color. The Fourteenth Amendment declares 'that all persons, whether colored or white, shall stand equal before the laws of the States, and, in regard to the colored race, for whose protection the amendment was primarily designed, that no discrimination shall be made against them by law because of their color.' *Strauder* v. *West Virginia, supra* (100 U.S. at 307, 25 L.Ed. 665)."

The rule announced in *Shelley* v. *Kraemer, supra,* 334 U.S. 1 [68 S.Ct. 836, 92 L.Ed. 1161, 3 A.L.R.2d 441], has been followed and extended in subsequent cases, particularly in *Barrows* v. *Jackson,* 346 U.S. 249 [73 S.Ct. 1031, 97 L.Ed. 1586].[2] In that case signers of racial restrictive covenants and their successors in interest sought damages against cosigners who, disregarding such covenants, had sold property burdened thereby to non-Caucasians. The Supreme Court declared (p. 254), "To compel respondent to respond in damages would be for the State to punish her for her failure to perform her covenant to continue to discriminate against non-Caucasians in the use of her property. The result of that sanction by the State would be to encourage the use of restrictive covenants. To that extent, the State would act to put its sanction behind the covenants. . . . The action of a state court at law to sanction the validity of the restrictive covenant . . . would constitute state action as surely as it was state action to enforce such covenants in equity, as in *Shelley, supra.*"

The Supreme Court stated further (in *Barrows, supra,* at p. 258): "This Court will not permit or require California to coerce respondent to respond in damages for failure to observe a restrictive covenant that this Court would deny California the right to enforce in equity, Shelley, supra; or

---

[2] Which affirmed the California decision of *Barrows* v. *Jackson,* 112 Cal. App. 534 [247 P.2d 99].

that this Court would deny California the right to incorporate in a statute (citing case); or that could not be enforced in a federal jurisdiction because such a covenant would be contrary to public policy: . . .''

In the case at bar plaintiff's right to dispossess defendant rests upon statutory grounds which, without the interjection of the issue of discrimination, absolutely entitled plaintiff to judgment. The trial court apparently believed that it could not examine into plaintiff's motives since plaintiff was acting entirely within the law. However, in *Gomillion* v. *Lightfoot*, 364 U.S. 339, 347-348 [81 S.Ct. 125, 5 L.Ed.2d 110], the Supreme Court of the United States held that '' 'Acts generally lawful may become unlawful when done to accomplish an unlawful end, [citing case], and a constitutional power cannot be used by way of condition to attain an unconstitutional result.' '' In *Gomillion, supra,* plaintiffs, Negro citizens of Alabama, sought an injunction to restrain city and county officials from enforcing a statute which altered the shape of the city and had the effect of removing practically all Negro voters but no white voters from the city. The Federal District Court dismissed the action on the ground that the court had no control over the boundaries of municipal corporations fixed by a duly convened and elected legislative body. On certiorari the Supreme Court of the United States reversed the judgment below holding that assuming the truth of plaintiffs' allegations the statute was invalid because it violated the Fourteenth Amendment equal protection clauses and the Fifteenth Amendment, which forbids a state from passing any law depriving a citizen of his vote because of race. In *Gomillion* the Supreme Court stated (p. 341), ''At this stage of the litigation we are not concerned with the truth of the allegations, that is, the ability of petitioners to sustain their allegations by proof. The sole question is whether the allegations entitle them to make good on their claim that they are being denied rights under the United States Constitution.''

Similarly, in the case at bar the court has the power to look beyond the allegations of the complaint in an unlawful detainer proceeding and to inquire into the constitutional issue placed before it by the second and third affirmative defenses of the action. That the court may inquire into equitable considerations in an unlawful detainer suit has been determined in this state in *Schubert* v. *Lowe*, 193 Cal. 291 [223 P. 550]. In that case the defendant in an unlawful

detainer action raised as an equitable defense his occupation of the premises under an oral agreement to lease. While his pleading was called a cross complaint for specific performance and as such was defective it was ruled sufficient to present the issue as an equitable defense to the plaintiff's attempt to wrest the possession of the premises from him by summary proceedings in unlawful detainer.

Amicus curiae California Apartment Owners Association in its brief argues that the defenses urged by defendant in this action are not equitable in nature because they are predicated upon the claimed violation of constitutional rights. An equitable defense is " [a] defense to an action on grounds which, prior to the passing of the Common Law Procedure Act (17 and 18 Vict. c. 125) would have been cognizable only in a court of equity.'' (Black's Law Dictionary (4th ed. 1951).) It has also been construed to mean a defense which a court of equity would recognize or one founded upon some distinct ground of equitable jurisdiction. (*City of New York* v. *Holzderber,* 44 Misc. 509 [90 N.Y.S. 63, 64].)

Discrimination according to Black's Law Dictionary (4th ed. 1951) is ''a failure to treat all equally; favoritism.'' Certainly equal standing before the law is a traditional concept within equitable jurisdiction. The mere fact that an equitable concept has been denominated by the legislators and the people as a constitutional proposition does not strip it of its equitable nature and derivation. A desire on the part of legislators and the people of the United States and the State of California to eliminate the injustices and inequities of discrimination has brought forth constitutional guarantees and statutes declaring a public policy opposed to denial of equal protection under the law. (U.S. Const., Amends. XIV, XV; Cal. Const., art. I, § 13; Unruh Civil Rights Act, Civ. Code, §§ 51, 52; Hawkins Act, Health & Saf. Code, §§ 35700-35741.)

Although defendant bases his defense upon constitutional propositions and statutes seeking to insure equal protection under the law, such defense nevertheless has its foundation in equitable principles.

The purpose of the general rule, that neither a counterclaim nor a cross complaint is admissible in an action of unlawful detainer, is to prevent tenants who have violated the covenants of their leases from frustrating the ordinary and summary remedy provided by statute for the restitution of the premises. (*Smith* v. *Whyers,* 64 Cal.App. 193 [221 P. 387].) Also, the

broad question of title cannot be raised and litigated by cross complaint or affirmative defense in an unlawful detainer action since the sole issue before the court is the right to possession. (*Cheney* v. *Trauzettel,* 9 Cal.2d 158, 159 [69 P.2d 832].)

However, as the court stated in *McCue* v. *Bradbury,* 149 Cal. 108 [84 P. 993], at p. 113, ". . . equity will refuse to enforce a forfeiture at the instance of one who has obtained the strictly legal right to it by fraud, deceit, or any form of oppressive practice; and, upon the other hand, will relieve the innocent when such a forfeiture so secured is sought to be enforced."

■ "Equitable principles apply in this state also where a forfeiture is sought in an action in unlawful detainer." (*Strom* v. *Union Oil Co.,* 88 Cal.App.2d 78, 83 [198 P.2d 347].) The court in *Knight* v. *Black,* 19 Cal.App. 518, 525-526 [126 P. 512], speaking of the remedy of unlawful detainer, said, ". . . although the remedy provided by law for the breach of such a condition is summary in principle and process, nevertheless the very nature of the action, involving, as it does, a forfeiture, appeals to the equity side of the court and in turn requires 'a full examination of all of the equities involved to the end that exact justice be done.' [Citation.]"

In this case defendant does not raise a cross complaint or counterclaim, nor does he attempt to litigate the question of title. What he seeks does not violate any of the exclusionary rules with regard to unlawful detainer actions. ■ His defense is a constitutional defense based upon a broad equitable principle. Certainly the interest in preserving the summary nature of an action cannot outweigh the interest of doing substantial justice. To hold the preservation of the summary proceeding of paramount importance would be analogous to the "tail wagging the dog."

In *James* v. *Marinship Corp.,* 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900], the defendant employer had the right to discharge certain Negro employees because they were not members of a labor union with which their employer had a closed-shop agreement. The employees sought and were granted a preliminary injunction restraining their employer from discharging them. The employees had alleged that the defendant labor union did not admit Negroes to membership. The union contended that it could close its membership to otherwise qualified persons for any reason whatsoever, be it arbitrary or otherwise, asserting that private voluntary associ-

ations have always had the right to limit membership to persons mutually acceptable. The labor union pointed out that it did permit Negroes to join an auxiliary union and thus they were not being excluded in fact. However, the court found that such auxiliary membership was discriminatory and unequal and that where a labor union has maintained a monopoly of the labor supply through closed-shop agreements such a union, like a public-service business, may not unreasonably discriminate against Negro workers solely for racial reasons.

Thus, in *James* v. *Marinship Corp., supra,* 25 Cal.2d 721, our Supreme Court went behind the allegations of the employer, that it was acting within its legal rights to hire and fire, and of the union, to admit or refuse membership, in order to reach the underlying issue of racial discrimination. The court held that Negroes must be admitted to union membership under the same terms and conditions applicable to non-Negroes, unless the union and the employer refrain from enforcing the closed-shop agreement against Negroes.

In *Nebbia* v. *New York,* 291 U.S. 502 [54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469], wherein a state statute regulating milk prices was upheld, the Supreme Court of the United States asserted that under our form of government the use of property and the making of contracts are normally matters of private and not public concern and that the general rule is that both shall be free from governmental interference; however, it pointed out (p. 523), ''. . . neither property rights nor contract rights are absolute; for government cannot exist if the citizen may at will use his property to the detriment of his fellows, or exercise his freedom of contract to work them harm.''

In *Hughes* v. *Superior Court,* 339 U.S. 460 [70 S.Ct. 718, 94 L.Ed. 985], the Supreme Court upheld the right of the California courts (*Hughes* v. *Superior Court,* 32 Cal.2d 850 [198 P.2d 885]) to enjoin picketing a place of business for the purpose of securing submission to a demand for employment of Negro clerks in proportion to the number of Negro customers. Here again the court enjoined the exercise of a practice, picketing, which is lawful in itself, because it was being used to subvert state policy against involuntary employment on racial lines.

Our state Supreme Court has declared in a recent landmark decision, one of a series of four cases dealing with civil rights, ''Discrimination on the basis of race or color is

contrary to the public policy of the United States and of this state." (*Burks* v. *Poppy Construction Co.,* 57 Cal.2d 463, 471 [20 Cal.Rptr. 609, 370 P.2d 313].) The Supreme Court pointed out that among the many California statutory prohibitions against racial discrimination is the Unruh Civil Rights Act, Civil Code sections 51 and 52, which provides in part: "All persons within the jurisdiction of this State are free and equal, and no matter what their race, color, religion, ancestry, or national origin are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."[3]

In *Burks* v. *Poppy Construction Co., supra,* 57 Cal.2d 463, 471, the Supreme Court declared, "Discrimination in housing leads to lack of adequate housing for minority groups [citing case], and inadequate housing conditions contribute to disease, crime, and immorality. Under the police power reasonable restrictions may be placed upon the conduct of any business and the use of any property [citing cases]. . . ." In the same case the Supreme Court also considered the Hawkins Act, Health and Safety Code section 35720, which makes it unlawful for an owner of a "publicly assisted housing accommodation," with knowledge of such assistance, to discriminate against any person by reason of his race, color, religion, national origin or ancestry in connection with the rental or sale of the housing accommodation. The court declared the purpose of this act to be to prevent future discrimination in connection with the rental or sale of publicly assisted housing. In *Burks, supra,* the defendants contended that the Hawkins Act contravenes the equal protection clauses of the federal and state Constitutions because it prohibits discrimination by owners of publicly assisted housing but not owners of other housing. The Supreme Court declared that there is a reasonable basis for the classification and no denial of equal protection.

In the amicus curiae brief of the California Apartment Owners Association in support of plaintiff it is asserted that to apply the doctrines of the *Shelley* (*Shelley* v. *Kraemer, supra,* 334 U.S. 1) and *Barrows* (*Barrows* v. *Jackson, supra,* 346 U.S. 249) cases would do more than merely protect the claimed rights of defendant. The Association asserts it would interfere with the contractual rights of the parties under

---

[3]Prior to its amendment in 1961, the section was applicable to "all citizens" instead of "all persons."

their month-to-month tenancy agreement and would extend those rights by converting a terminable month-to-month tenancy (a tenancy at will) into an oral lease agreement which could by the unilateral action of defendant be extended into a lease of limitless years' duration, binding upon plaintiff landlord but terminable on only 30 days' notice at any time at the will of defendant tenant. Thus, it asserts, the tenant's shield could be turned by him, but only by him, into a sword. He would be permitted to say to his landlord, "I do not wish to rent from you because you are a white person, and hereby give you thirty days' written notice of my intention to terminate." This he could do with malice, it asserts, with the intent to discriminate, but nevertheless with impunity. The association queries: "Is this the *equal* protection which the Constitution guarantees? Is this the *equal* treatment appellant demands?

The sage observation of the Supreme Court of the United States in *Hughes* v. *Superior Court, supra,* 339 U.S. 460, 469 [70 S.Ct. 718, 94 L.Ed. 985], is very pertinent at this point in answer to questions and speculations as to the future effect of a judicial decision: "We do not go beyond the circumstances of the case. Generalizations are treacherous in the application of large constitutional concepts."

It is not the intention of this court to create a situation where persons of one or another race may be placed in position to discriminate against others. What we seek to do is to afford the opportunity to one claiming discrimination to offer proof of his claim. In doing so we act with the calm assurance that should other discriminatory practice result from this decision the courts can be relied upon to enjoin it as illustrated by the case of *Hughes* v. *Superior Court, supra,* 339 U.S. 460 [70 S.Ct. 718, 94 L.Ed. 985]. Our purpose is to carry out the constitutional mandates of equal protection under the law as was the purpose of our Supreme Court in *James* v. *Marinship Corp., supra,* 25 Cal.2d 721, 745. There the court disposed of a contention that its ruling would in itself result in discrimination by pointing out that the injunction granted in that case ". . . is not so broad as to give Negroes any greater right to membership than that extended to other persons; it was clearly intended to do no more than eliminate discrimination upon the basis of race and color alone."

█ Certainly, it is best for a court to pause, however long as may be necessary, albeit in summary proceedings, to afford one an opportunity to prove allegations of racial dis-

crimination which, if found true, would proscribe the court from taking action under both the federal and state Constitutions.

The Attorney General of the State of California, in an amicus curiae brief filed in support of the position of defendant, refers to the Unruh and Hawkins Civil Rights Acts heretofore mentioned as examples of statutory prohibitions against racial discrimination in California. He points out that since the Unruh Act was held by the Supreme Court in the *Burks* case (*Burks* v. *Poppy Construction Co., supra,* 57 Cal.2d 463) to apply to the business of selling houses "It follows, in this case, that the interdictions of that act apply to the business of renting housing accommodations."

California Apartment House Owners Association argues that the *Burks* case, *supra,* is not a proper basis for the assumption that renting housing accommodations is a business. It asserts that the Supreme Court in *Hudson* v. *Nixon,* 57 Cal.2d 482 [20 Cal.Rptr. 620, 370 P.2d 324], a case in the same series as *Burks,* negates the applicability of the Unruh Act to a rental situation. In the latter decision the Supreme Court notes "Our decision in [the *Burks* case] is controlling with respect to the validity and application of the Hawkins Act." (P. 483.) From this, amicus curiae Apartment House Owners Association, in our case, reasons that the Unruh Act can have no application to the renting of property. We find no logic in this reasoning.

The *Hudson* case, *supra,* dealt directly with discriminatory practices by an owner of a publicly assisted housing accommodation. The Hawkins Act deals solely and directly with that subject and was therefore held applicable to the facts in the *Hudson* case, *supra.* In *Burks, supra* (p. 470) the Supreme Court stated, "A court must, where reasonably possible, harmonize statutes and construe them so as to give force and effect to all their provisions. Both statutes are designed to discourage discrimination, and it would be unreasonable to hold that the provisions of the Hawkins Act, relating to only part of the housing field, reflect an intent to exclude from the Unruh Act all discriminatory practices with respect to housing, including those that clearly come within the terms of the Unruh Act but are not covered by the provisions of the Hawkins Act. Even as to a case appearing to come within both enactments, we cannot properly hold that the sections of the Hawkins Act were intended to exclude all operation of the Unruh Act without regard to the circumstances. Of

course, a plaintiff should not be permitted to recover under both acts and obtain double damages for the same discriminatory conduct, but he may proceed to trial on alternative causes of action if they are properly pleaded."

The validity of the Hawkins Act was attacked in *Burks, supra,* upon the ground that it contravened the equal protection clauses of the federal and state Constitutions because it prohibits discrimination by owners of publicly assisted housing but not by owners of other housing. The Supreme Court held to the contrary and that there is a reasonable basis for the classification. The court declared (p. 476), "Discrimination based upon race or color in housing provided by the state through its branches or agencies violates the Fourteenth Amendment (*Banks* v. *Housing Authority, supra,* 120 Cal. App.2d 1, 16 et seq. [260 P.2d 668]), and an extension of the prohibition to private housing receiving public assistance is a reasonable further step in the application of the policy against such conduct. The closer the connection of the discrimination with governmental activity, the more odious its character, and accordingly the Legislature could reasonably conclude that the problem of discrimination is more important in publicly assisted housing than in private housing which has no governmental assistance. Moreover, the primary purpose of the governmental assistance, namely, to raise the housing standards of the community, will be frustrated to a substantial extent if racial minorities, whose housing conditions are often substandard, are hampered in obtaining the full benefits of the assistance."

The Unruh Act prohibits discriminatory practices in "all business establishments of every kind whatsoever." This language is all-inclusive and as the Supreme Court noted in *Burks, supra* (p. 468) was used ". . . in the broadest sense reasonably possible. The word 'business' embraces about everything about which one can be employed, and it is often synonymous with 'calling, occupation, or trade, engaged in for the purpose of making a livelihood or gain.' (See *Mansfield* v. *Hyde,* 112 Cal.App.2d 133, 137 [245 P.2d 577]; 5 Words and Phrases (perm. ed. 1940) p. 970 et seq.) The word 'establishment,' as broadly defined, includes not only a fixed location, such as the 'place where one is permanently fixed for residence or business,' but also a permanent 'commercial force or organization' or 'a permanent settled position (as in life or business).' (See Webster's New Internat. Dict. (2d ed. 1957) p. 874; *id.* (3d ed. 1961) p. 778.)"

Applying these definitions in the case before this court we hold that plaintiff was engaged in "business." Whether it operates a "business establishment," however, is not readily apparent from the record before us. Clearly, not all persons who rent their property to others can be held to operate business establishments. Plainly, many do not. We are not in position to hold, therefore, that the discrimination complained of constituted a violation of the Unruh Act. Neither is such a holding necessary to our decision in this case.

We hold that defendant should have been permitted to produce proof of the allegations of his special defenses of discrimination, which if proven would bar the court from ordering his eviction because such "state action" would be violative of both federal and state Constitutions.

The judgment is reversed and the case is remanded to the Municipal Court, Santa Anita Judicial District, for retrial.

Jefferson, J., and Balthis, J., concurred.