IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 33430-9-III |
| | ) | |
| JEFFREY K. NEWGARD, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| PENNELOPY ANN NEWGARD, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Pennelopy Newgard and Jeffrey Newgard's parenting plan granted them joint decision-making authority over their children's nonemergency health care. Pennelopy[1] began taking one child to psychotherapy and requested that Jeffrey contribute his percentage of the costs pursuant to the child support order. Jeffrey refused because he did not consent to the treatment. The trial court ruled that Jeffrey was not required to pay his percentage of the child's psychotherapy costs incurred after he expressed disagreement over the treatment to Pennelopy.

---

[1] We will refer to the parties by their first names for ease and clarity.

On appeal, Pennelopy argues that her violation of the joint decision-making provision of the parenting plan does not excuse Jeffrey from his child support obligation. The Washington State Supreme Court's recent decision of *In re Marriage of Zandi*, 187 Wn.2d 921, 391 P.3d 429 (2017) confirms Pennelopy's argument. However, *Zandi* also permits a trial court to consider whether bad faith or unreasonable conduct on the part of a parent permits modification of the child support order. For this reason, we remand for the trial court to consider its order in light of *Zandi* and to enter appropriate findings.

## FACTS

The parties' September 2007 parenting plan grants Pennelopy primary residential placement of their two children. Paragraph 4.2 of the plan grants the parties joint decision-making authority over the children's "[n]on-emergency health care." Clerk's Papers (CP) at 220. In June 2010, the trial court approved a new child support order. Paragraph 3.19 of the new order stated: "Both parents have an obligation to pay their share of uninsured medical expenses. [Jeffrey] shall pay 69.3% of uninsured medical expenses . . . and [Pennelopy] shall pay 30.7% of uninsured medical expenses." CP at 7-8.

In early 2013, Pennelopy began taking one child to individual psychotherapy. In December 2013, Pennelopy asked Jeffrey to contribute to the psychotherapy expenses.

2

On February 4, 2014, Jeffrey responded by letter that he would not pay the expenses. Citing paragraph 4.2 of the parenting plan, he explained, "I have at no time ever given consent for psychotherapy." CP at 65. On January 20, 2015, Pennelopy filed a motion for judgment for back medical bills.

Pennelopy's motion was heard by Yakima County Superior Court Commissioner Kevin Naught on February 18, 2015. Commissioner Naught ruled that Jeffrey was only responsible for the psychotherapy bills "up and to the time that he actually put the wife on notice that he did not agree with these expenses." CP at 112. On March 10, 2015, Commissioner Naught's ruling was reduced to a written order. On March 19, 2015, Pennelopy sought revision of Commissioner Naught's ruling on the grounds that her violation of the parenting plan did not relieve Jeffrey from the terms of the child support order.

The Honorable Gayle Harthcock heard Pennelopy's motion for revision on April 30, 2015. The trial court reasoned that requiring Jeffrey to pay his portion of the child's counseling costs incurred after the February 4, 2014 letter "would be kind of an absurd result . . . because what that means is someone can go and get services, medical services, for their child and rack up thousands and thousands of dollars without notification to the other side and then expect that those bills be paid." Report of

3

Proceedings (RP) at 5. The trial court denied Pennelopy's motion "because mother violated the parenting plan's joint decision making provisions."[2] CP at 119.

Pennelopy timely appealed.

## STANDARD OF REVIEW

"On a revision motion, a trial court reviews a commissioner's ruling de novo based on the evidence and issues presented to the commissioner." *In re Marriage of Williams*, 156 Wn. App. 22, 27, 232 P.3d 573 (2010). The trial court's decision to accept or revise the commissioner's decision then becomes the decision of the trial court. *In re Parentage of Hilborn*, 114 Wn. App. 275, 278, 58 P.3d 905 (2002). "When an appeal is taken from an order denying revision of a court commissioner's decision, we review the superior court's decision, not the commissioner's." *Williams*, 156 Wn. App. at 27. This court "will uphold a trial court's decision regarding child support unless there was a manifest abuse of discretion." *In re Marriage of Mattson*, 95 Wn. App. 592, 599, 976 P.2d 157

---

[2] The trial court's revision order corrected an error on the face of Commissioner Naught's order, which is unrelated to this appeal. Commissioner Naught's written order stated that Jeffrey was not responsible "for *any* of the medical bills incurred subsequent to February 4, 2014." CP at 100 (emphasis added). The trial court's revision order stated that "[t]he mother's motion for revision is granted only to correct the written order to conform to the court's clear intention as expressed in the commissioner's oral ruling, as follows: Petitioner is not required to pay his percentage of only psychotherapy bills incurred after February 4, 2014. . . . In all other respects, the motion for revision is denied." CP at 119.

4

(1999). "A court necessarily abuses its discretion if its decision is based on an erroneous view of the law." *In re Marriage of Scanlon*, 109 Wn. App. 167, 174-75, 34 P.3d 877 (2001).

## ISSUE PRESENTED

*Whether a parent's violation of a joint medical decision-making parenting plan provision excuses the other parent from paying his or her respective portion of the expense pursuant to a child support order*

## ANALYSIS

Pennelopy argues that even if she did violate the joint medical decision-making provision of the parenting plan, Jeffrey is responsible for his portion of the medical expenses because "[a] parent's obligation under a child support order is unaffected by the other parent's violation of a provision of the parenting plan." Br. of Appellant at 3-4. Jeffrey responds that he is not responsible for health care costs incurred in violation of the joint decision-making provision of the parenting plan as the child support order only applies when the parenting plan is followed.

There is no merit to Jeffrey's contention that his support obligation is conditioned on Pennelopy obtaining his permission to incur health care costs for their child. A party's failure to perform under a parenting plan does not excuse the other party's obligations under a child support order. RCW 26.09.184(7) explicitly provides:

5

> If a parent fails to comply with a provision of a parenting plan or a child support order, the other parent's obligations under the parenting plan or the child support order *are not affected.* Failure to comply with a provision in a parenting plan or a child support order may result in a finding of contempt of court, under RCW 26.09.160.

(Emphasis added); *see also* RCW 26.09.160(1) ("If a party fails to comply with a provision of a decree or temporary order of injunction, the obligation of the other party to make payments for support or maintenance or to permit contact with children is not suspended."). "'If a statute is clear on its face, its meaning is to be derived from the language of the statute alone.'" *Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006) (quoting *Kilian v. Atkinson*, 147 Wn.2d 16, 20, 50 P.3d 638 (2002)).

In general, Jeffrey is obligated to pay his portion of child support relating to his children's reasonable and necessary health care costs. *See* RCW 26.19.080. Monthly health care costs, including mental health treatment, "shall be shared by the parents in the same proportion as the basic child support obligation." RCW 26.19.080(2); *see also* RCW 26.09.105(9) ("Each parent is responsible for his or her proportionate share of uninsured medical expenses for the child or children covered by the support order."). The trial court "may exercise its discretion to determine the necessity for and the reasonableness of all amounts ordered in excess of the basic child support obligation." RCW 26.19.080(4). In general, if the applicable health care costs are reasonable and

6

necessary, the trial court has no discretion but to order payment pursuant to the parents' proportionate share. *In re Marriage of Zandi*, 190 Wn. App. 51, 55-56, 357 P.3d 65 (2015), *aff'd*, 187 Wn.2d 921. The exception to this rule is when modification of the order is appropriate because of a substantial change of circumstances. *In re Marriage of Schumacher*, 100 Wn. App. 208, 213, 997 P.2d 399 (2000). The recent Supreme Court decision of *In re Marriage of Zandi*, 187 Wn.2d 921 illustrates this principle.

In *Zandi*, the parties' daughter was visiting her maternal aunt near Cincinnati, Ohio. *Id.* at 924. She began suffering pain from kidney stones. *Id.* The mother called the father and advised him that their daughter needed surgery to dissolve the kidney stones. *Id.* The father objected to surgery in Cincinnati because Cincinnati was not within the medical insurer's network. *Id.* The father asked the mother to either wait to see if the medical insurer would authorize out-of-network coverage, or have her sister drive their daughter to a facility in Cleveland, Ohio—186 miles northeast—which was the closest facility within the medical insurer's network. *Id.* The mother attempted to obtain out-of-network authorization and was even assured by a doctor in the Cincinnati facility that the medical insurer would authorize coverage. *Id.* at 924, 929-30. The Cincinnati facility performed the surgery at a cost of approximately $13,000. *Id.* at 924.

Ultimately, the medical insurer denied coverage. *Id.* The parties' child support order required the father to pay 100 percent of uninsured medical expenses. *Id.* at 925. The father sought to be excused from this requirement because the mother did not obtain preauthorization before sending the daughter to an out-of-network facility. *Id.* The trial court equitably apportioned the bill 25 percent to the mother and 75 percent to the father, because the mother was in a "'better position to secure coverage for the kidney stone treatment by [the medical insurer].'" *Id.* The Court of Appeals held this was an abuse of discretion, and the *Zandi* court agreed. *Id.* at 931.

*Zandi* holds that marital fault is irrelevant in proceedings relating to divorce. *Id.* at 929. And absent changed circumstances to justify modification, a child support order must be enforced in accordance with its terms. *Id.* *Zandi* discusses the possibility that one parent might "'boundlessly violate the insurance plan's in-network limitation with knowledge that the other parent would be forced to absorb the resulting costs.'" *Id.* (quoting *Zandi*, 190 Wn. App. at 57 (Worswick, J., dissenting)). *Zandi* disposed of that concern by noting there was no evidence of bad faith or unreasonable conduct by either parent. *Id.* Pertinent to our disposition here, *Zandi* explains:

> [A] trial court[ ] [has] discretion to fashion a result that comports with fundamental fairness. A trial court presented with evidence of bad faith could, for example, reasonably conclude that a party acting in bad faith constitutes changed circumstances.

8

*Id.* at 930 n.2 (citing RCW 26.09.170(5)-(7)).

Here, we are unable to determine whether Pennelopy engaged in that type of conduct that would permit modification of the child support order. Although the trial court here applied equitable principles in reaching its result, *Zandi* repudiated the notion that equitable principles, alone, empower courts to modify child support orders.[3] *Zandi* permits a finding of bad faith or unreasonable conduct to modify a child support order. Because this requires findings, we remand to the trial court for it to reconsider its order in light of *Zandi*.

*Attorney fees and costs*

Both parties seek appellate attorney fees and costs.

*Jeffrey's request*

Jeffrey requests appellate attorney fees and costs under three theories—(1) RCW 26.18.160, (2) RAP 18.9, and (3) Pennelopy's alleged intransigence for filing the appeal and requiring Jeffrey to incur additional attorney fees. RCW 26.18.160 provides for an award of costs, including reasonable attorney fees, to the prevailing party in any action to enforce a support order under chapter 26.18 RCW. The statute entitles Jeffrey to his

---

[3] "Equity . . . follows the law and cannot provide a remedy where legislation expressly denies it." *Stephanus v. Anderson*, 26 Wn. App. 326, 334, 613 P.2d 533 (1980).

reasonable attorney fees and costs only if Pennelopy acted in bad faith in connection with this proceeding. RCW 26.18.160. Under RAP 18.9, frivolous appeal sanctions should be awarded "if the appellate court is convinced that the appeal presents no debatable issues upon which reasonable minds could differ and is so lacking in merit that there is no possibility of reversal." *In re Marriage of Foley*, 84 Wn. App. 839, 847, 930 P.2d 929 (1997). Additionally, a party's intransigence in a family law matter is a basis for attorney fees on appeal if it caused the other party to incur additional attorney fees. *In re Marriage of Wallace*, 111 Wn. App. 697, 710, 45 P.3d 1131 (2002); *accord In re Marriage of Buchanan*, 150 Wn. App. 730, 739, 207 P.3d 478 (2009). Intransigence is "demonstrated by litigious behavior, bringing excessive motions, or discovery abuses." *Wallace*, 111 Wn. App. at 710.

Pennelopy's arguments are not frivolous nor do they constitute intransigence. Her arguments are consistent with *Zandi*. We deny Jeffrey's request for an award of appellate attorney fees and costs.

*Pennelopy's request*

Pennelopy seeks attorney fees and costs pursuant to RCW 26.09.140 and RAP 18.1. She asserts "[t]he father nets $13,587 per month while the mother nets $4,611 per month." Br. of Appellant at 6.

10

No. 33430-9-III
*In re Marriage of Newgard*

When applicable law mandates consideration of the parties' financial resources in making an award of fees and expenses, RAP 18.1(c) requires the requesting party to file a financial affidavit no later than 10 days prior to the date the case is set for oral argument or consideration. Here, we originally notified the parties that a panel would consider this case on March 18, 2016. After so notifying the parties, we stayed this decision pending the Supreme Court's *Zandi* decision. Once the Supreme Court decided *Zandi*, the parties filed supplemental briefs. After we received the briefs, we notified the parties that a panel would consider this case on June 26, 2017. Pennelopy has not filed a financial declaration and, thus, has not complied with RAP 18.1(c). We, therefore, do not consider her request.

Remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.

Korsmo, J.

11