[No. 17766. Department One. May 25, 1923.]

## O. B. WILLIAMS, *Appellant*, v. JOHN P. DUKE *et al.*, *Respondents.*[1]

BILLS AND NOTES (71, 73-6)—TRANSFER—TITLE OF BONA FIDE PUR-CHASERS—DEFENSES—SET-OFF OR COUNTERCLAIM. Where a bank, hold-ing notes of a customer, sold and delivered them before maturity in good faith and for value, and not as security, to another bank, the latter is a bona fide purchaser; and notwithstanding the latter held other collateral of the payee bank in excess of all its liabilities, the customer is not entitled, on the insolvency of the payee bank, to offset his deposits against the notes; since the payee bank had no further interest in them; in view of Rem. Comp. Stat., §§ 191 and 266, providing against set-off against negotiable paper assigned before maturity.

EQUITY (37)—MAXIMS. Where there is a positive law denying the right of set-off against negotiable paper in the hands of a bona fide purchaser, equity follows the law and cannot be appealed to.

Appeal from a judgment of the superior court for King county, Ronald, J., entered April 17, 1922, upon sustaining a demurrer to the complaint, dismissing an action for equitable relief. Affirmed.

*Kerr, McCord & Ivey,* for appellant.

*W. V. Tanner* and *John P. Garvin,* for respondents Duke and Langley.

*Albert C. Agnew, Bausman, Oldham, Bullitt & Eg-german,* and *Walter L. Nossaman (Wm. A. Boekel,* of counsel), for respondent Federal Reserve Bank of San Francisco.

MITCHELL, J.—A general demurrer was sustained to the complaint in this case, and the plaintiff, refusing to plead further, has appealed from a judgment dis-missing the action.

Substantially, the complaint alleges as follows: In May, 1921, appellant executed and delivered his $5,000

[1]Reported in 215 Pac. 372.

negotiable promissory note, due August 20, 1921, to the Scandinavian-American Bank of Seattle (hereinafter spoken of as the Scandinavian Bank), and in June, 1921, he executed and delivered his $20,000 negotiable promissory note, due September 13, 1921, to the same bank. Before maturity of the notes, they were transferred and negotiated for value by the payee bank to the Federal Reserve Bank of San Francisco. On June 30, 1921, the Scandinavian Bank failed and was taken over by the supervisor of banks of the state of Washington for the purpose of settling its affairs. At the time the bank failed, the appellant had on deposit in that bank $11,398.52, and at that time the Federal Reserve Bank held collateral pledged by the Scandinavian Bank, under the terms of an agreement, as security for the payment of any and all indebtedness of the Scandinavian Bank to the Federal Reserve Bank, and such collateral exceeded the amount of all the liabilities of the Scandinavian Bank to the Federal Reserve Bank.

It is further alleged in the complaint that the liquidating agent of the Scandinavian Bank has been making it a practice to allow makers of notes held by the bank to offset against the notes the amounts of their deposits, and that, at the time of the respective maturities of the notes in question, appellant demanded that the Federal Reserve Bank and the Scandinavian Bank and its liquidating agent permit him to offset against his notes the amount of his deposit in the Scandinavian Bank at the time it failed; that the requests were refused, and in order to avoid litigation and protect his credit, he paid the notes in full under protest. The appellant has presented a claim and demand to the supervisor of banks for the amount of his deposit as a preferred claim, which was rejected as such.

It is further alleged in the complaint that the allowance of a set-off to makers of notes held by the Scandinavian Bank at the time it closed its doors and the denial of a similar privilege to makers of notes discounted and sold by the Scandinavian Bank would result in an unwarranted preference of one class over another. The prayer of the complaint is to enjoin the Federal Reserve Bank from returning to the Scandinavian Bank or its liquidating agent the collateral held generally, but that the collateral be impounded and applied, to the extent necessary, to the payment of appellant's claim in the sum of $11,398.52.

After the sale and delivery of the notes by the Scandinavian Bank it no longer had any interest in them as owner. The Federal Reserve Bank became the owner of all interest in them, having purchased them before maturity, in good faith and for value. The case is not one wherein the payee bank pledged the notes as collateral, thus retaining an interest in them as owner, like the case of *Seymour v. Becker,* 71 Minn. 394, 73 N. W. 1096, cited and relied on by the appellant, but it is a case identical in principle with the case of *Munger v. Albany City National Bank,* 85 N. Y. 580, wherein Munger had $3,000 in a bank in Rochester represented by a certificate of deposit in his favor, which he continued to hold until the bank failed. By further dealing he gave the Rochester bank his promissory note for $1,500, which that bank discounted and transferred to the Albany bank. The Rochester bank had already furnished the Albany bank general collateral assuring the payment of all discounted items. In disposing of the rights of Munger, the court of appeals concluded:

"When the bank at Rochester transferred to the bank at Albany the note of the plaintiff, no equity existed

empowering him to set off his deposit against that note. The Rochester bank did just what he gave it legal and equitable right to do. It transferred his note, and took the avails of the transaction and became a debtor collateral or contingent to him. Those avails entered into its property. The securities that it had before that pledged under the general agreement were its property. All were its assets, held by it for the security of all of its creditors—other creditors as well as the plaintiff. He having no right of set-off or stoppage or application when his note was transferred, we fail to see how a paramount right thereto now arises to him from the fact that the Rochester bank had put with the Albany bank certain securities as collateral for a general indebtedness, or general contingent liability. They were put there before this note was made, as a general and continuing security for any indebtedness of the bank at Rochester arising from the failure of promisors to pay, and with the expectation that payment should first be sought from those promisors. . . . And when there came insolvency and bankruptcy upon the bank at Rochester, as there were not then in fact and in law mutual debts or credits between it and the plaintiff, why did not the legal rights of other creditors and their equities, as great as those of the plaintiff, intervene or take equal rank?''

This rule has been covered by statute in this state. Section 191, Rem. Comp. Stat. [P. C. § 8272], provides:

''. . . no counterclaim or offset shall be pleaded against negotiable paper assigned before due, and where the holder thereof has purchased the same in good faith and for value, and is the owner of all interest therein.''

Section 266, Rem. Comp. Stat. [P. C. § 8353], also provides against set-off in actions upon negotiable promissory notes or bills of exchange negotiated in good faith and without notice before due.

The appellant invokes the aid of equity to relieve him from the force of the statutory rule. The case in-

volves negotiable paper and must be determined upon consideration of the rights of the holder of the paper as well as those of the maker. Under provisions of the negotiable instruments law, §§ 3443 and 3450, Rem. Comp. Stat. [P. C. §§ 4123, 4130], the Federal Reserve Bank became the holder in due course, before maturity and for value, of the notes in question, while under other sections of the code, already referred to, there is no right of set-off against them. There is no lack of positiveness in the law. In such situation equity does not attempt to assail or abrogate, but follows and is subordinate to the law. In discussing this principle the supreme court of the United States, in *Magniac v. Thomson,* 56 U. S. 281, 14 L. Ed. 696, said:

"That wherever the rights or the situation of the parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation, but in all such instances the maxim *equitas sequitur legem* is strictly applicable."

Upon the same subject, see, also: *Beeson v. Brotherhood of Locomotive Firemen and Enginemen,* 101 Kan. 399, 166 Pac. 466; *Allen v. Kitchen,* 16 Idaho 133, 100 Pac. 1052.

Holding such to be the law, it is unnecessary to discuss the allegations of the complaint that the appellant paid the Federal Reserve Bank to avoid litigation, to save his credit and under protest. He only discharged his promise to pay to one entitled to receive it, without any right of set-off and without any accompanying right to reduce *pro tanto* the general collateral held by the Federal Reserve Bank belonging to the Scandinavian Bank, the original payee in the notes.

Affirmed.

MAIN, C. J., MACKINTOSH, BRIDGES, and HOLCOMB, JJ., concur.