FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JUL 0 6 2017

Fairhurst, CQ.

CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on July 6, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK



# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| KING COUNTY, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. 92744-8 |
| | ) | |
| VINCI CONSTRUCTION GRANDS | ) | EN BANC |
| PROJETS/PARSONS RCI/ | ) | |
| FRONTIER-KEMPER, JV, a Washington | ) | Filed: JUL 0 6 2017 |
| joint venture, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| LIBERTY MUTUAL INSURANCE | ) | |
| COMPANY, a Massachusetts corporation; | ) | |
| FEDERAL INSURANCE COMPANY, an | ) | |
| Indiana corporation; FIDELITY AND | ) | |
| DEPOSIT COMPANY OF MARYLAND, a | ) | |
| Maryland corporation; ZURICH | ) | |
| AMERICAN INSURANCE COMPANY, a | ) | |
| New York corporation; and TRAVELERS | ) | |
| CASUALTY SURETY COMPANY OF | ) | |
| AMERICA, a Connecticut corporation, | ) | |
| | ) | |
| Petitioners. | ) | |
| | ) | |

YU, J. — This case requires us to examine an award of attorney fees against five surety companies following a three-month jury trial for breach of contract in a public works project. The parties litigated the issue of whether three construction firms had defaulted on a contract, thus triggering coverage under a performance bond issued by the surety companies. At issue is whether the existence of a statutory fee provision bars equitable remedies available at common law for coverage disputes and whether the trial court correctly determined that segregation between covered and uncovered fees was impossible. The Court of Appeals affirmed the award of *Olympic Steamship* fees and held that the trial court did not abuse its discretion in determining that the fees could not be segregated. *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). For the reasons discussed below, we now affirm.

FACTUAL AND PROCEDURAL HISTORY

The underlying facts are not at issue here, having been resolved by a jury trial and being unchallenged by petitioners on appeal. In 2006, King County contracted with three construction firms—Vinci Construction Grands Projets, Parsons RCI, and Frontier-Kemper JV (collectively VPFK)—to expand its wastewater treatment system. This expansion entailed the construction of a new treatment plant along with three new conveyance tunnels that would increase the treatment system's capacity to manage additional sewage from both Snohomish

County and King County residents and businesses. Because the project would impact public health, the environment, and local economic growth, King County required substantial completion of the project by November 14, 2010.

VPFK won the bid to construct the second and third sections of the central tunnel, which together would measure 18 feet in diameter and 31,700 feet in length. Further, both sections of the tunnel were to be excavated concurrently. Under the terms of the contract, VPFK secured a performance bond from five surety companies: Liberty Mutual Insurance Company, Travelers Casualty and Surety Company of America, Federal Insurance Company, Fidelity and Deposit Company of Maryland, and Zurich American Insurance Company (collectively Sureties). If VPFK failed to perform under the terms of the contract, the performance bond obligated the Sureties to step in and "promptly remedy the default in a manner acceptable to [King County]." Clerk's Papers (CP) at 5542.

Throughout the project, VPFK encountered a number of difficulties with its equipment and management. At the time of its bid, VPFK estimated it could dig 57 feet per day on the longest tunnel, yet during the course of construction it averaged only 28 feet per day. VPFK's tunnel-boring machines broke down numerous times, including one nine-month delay during which VPKF attempted (and failed) to ease the tunnel's atmospheric pressure by removing groundwater before repairing the stalled machine. VPFK submitted numerous change orders

and at one point agreed to establish a workshop of experts from various disciplines to "'mutually review all aspects of the tunneling operation to develop strategies for the remaining construction.'" *Id.* at 7046.

When it became clear that VPFK was not "prosecuting the Work with sufficient diligence to achieve Substantial Completion within the Contract Time," King County declared VPFK to be in default and requested a corrective action plan that would ensure completion within the contract's deadline. *Id.* at 576. VPFK submitted its revised schedule to King County, estimating a completion date several years past the contract's deadline and at a significantly greater cost. As a result, King County entered into an interim agreement with VPFK to hire a different contractor to complete a portion of the work.

King County notified the Sureties of its plan and requested that the Sureties either cure VPFK's default themselves or agree to fund the new contractor. Instead, the Sureties argued that performance was not required under the bond because no breach had occurred. On April 19, 2010, King County filed suit against VPFK and one of the sureties, Travelers Casualty and Surety Company of America, claiming breach of contract and seeking declaratory relief that VPFK was in default and that the Sureties were joint and severally liable. The remaining four surety companies intervened, and together the Sureties, while denying coverage, also adopted all of VPFK's defenses against breach of contract.

At trial, the jury was asked to consider whether "VPFK was in default of its obligations under the Contract by failing to perform its work so as to ensure substantial completion by the Contract deadline" and whether "the Sureties breached their obligations under the Bond because the Sureties failed to pay King County's costs and expenses incurred because of VPFK's default." *Id.* at 9091. The jury found in favor of King County and awarded nearly $130 million in damages. Pursuant to *Olympic Steamship*, 117 Wn.2d 37, the trial court awarded King County its attorney fees and costs totaling nearly $15 million. The trial court further held that the fees could not be segregated because King County's claim against the Sureties was intertwined and indistinguishable from its claim against VPFK.

On appeal, the Sureties argued that *Olympic Steamship* did not apply because the fee provisions of RCW 39.04.240 are the exclusive fee remedy in public works contracts. Further, the Sureties disagreed with the trial court's determination that the fees could not be segregated. The Court of Appeals affirmed the award of fees, holding both that RCW 39.04.240 was not the exclusive fee remedy and that the fees could not be segregated. *King County v. Vinci Constr. Grands Projets/Parsons RCI/Frontier-Kemper, JV*, 191 Wn. App. 142, 184, 189, 364 P.3d 784 (2015). We granted the Sureties' petition for review

and affirm. *King County v. Vinci Constr. Grands Projets/Parsons RCI/Frontier-Kemper, JV*, 186 Wn.2d 1008, 380 P.3d 459 (2016).

## ISSUES

A.     Is RCW 39.04.240, which applies the attorney fee award provisions of RCW 4.84.250 through RCW 4.84.280 to public works contracts, the exclusive fee remedy available in public works contract disputes where the primary issue is coverage?

B.     Did the trial court err in determining that the award of attorney fees could not be segregated?

## ANALYSIS

An award of attorney fees is an issue of law that this court reviews de novo. *Durland v. San Juan County*, 182 Wn.2d 55, 76, 340 P.3d 191 (2014). "Washington follows the American rule in awarding attorney fees." *Dayton v. Farmers Ins. Grp.*, 124 Wn.2d 277, 280, 876 P.2d 896 (1994). Under the American rule, a court may award fees only when doing so is authorized by a contract provision, a statute, or a recognized ground in equity. *Hamm v. State Farm Mut. Auto. Ins. Co.*, 151 Wn.2d 303, 325, 88 P.3d 395 (2004). One such equitable ground is the rule announced in *Olympic Steamship*. 117 Wn.2d at 53.

In *Olympic Steamship*, an insured warehouseman sought reimbursement of claims paid to salmon packers from its general comprehensive liability insurer. *Id.*

at 39-40. The insurers denied coverage for the claims, forcing the warehouseman to file suit. *Id.* at 40. When the warehouseman prevailed at trial, we awarded attorney fees, holding that "an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract." *Id.* at 53.

The fee rule announced in *Olympic Steamship* applies equally to suretyships and performance bonds. In 2007, four justices of this court noted that there is no material distinction between performance bonds and insurance contracts and that "all surety bonds are regarded as 'in the nature' of insurance contracts." *Colo. Structures, Inc. v. Ins. Co. of W.*, 161 Wn.2d 577, 598, 167 P.3d 1125 (2007) (plurality opinion) (quoting *Nat'l Bank of Wash. v. Equity Inv'rs*, 86 Wn.2d 545, 553, 546 P.2d 440 (1976)). Although there are certainly many distinctions between suretyship and insurance, the lead opinion noted that "the relative positions of the contractor and the surety compel, pursuant to *Olympic Steamship*, an award of attorney fees when the surety wrongfully denies coverage." *Id.* at 601 (Chambers, J., lead opinion). Justice Sanders agreed on the issue of awarding attorney fees in his dissenting opinion, describing this as a separate, "second issue." *Id.* at 638 (Sanders, J., dissenting). Thus, a majority[1] of the court agreed

---

[1] The Sureties quote a footnote in *Matsyuk v. State Farm Fire & Casualty Co.*, 173 Wn.2d 643, 660 n.5, 272 P.3d 802 (2012), stating that "'*Colorado Structures* does not have a majority rule.'" Sureties' Suppl. Br. at 11. But as amici correctly point out, "footnote 5 was

7

that attorney fees under *Olympic Steamship* are available in the context of performance bonds, and attorney fees were in fact awarded to the insured in *Colorado Structures* on this basis. Clerk's Ruling Regarding Setting of Att'y Fees & Am. Clerk's Ruling on Costs, *Colo. Structures, Inc. v. Ins. Co. of W.*, No. 76973-7 (Wash. May 13, 2008); *see In re Det. of Reyes*, 184 Wn.2d 340, 346, 358 P.3d 394 (2015) ("A principle of law reached by a majority of the court, even in a fractured opinion, is not considered a plurality but rather binding precedent.").

Although the Sureties ask us to reconsider *Colorado Structures*, they make no showing that the court's reasoning was in error. Instead, the Sureties contend that the equitable and public policy principles underlying *Olympic Steamship* are not present in the surety context. As amici point out, "The sureties resurrect the same arguments that the *Colorado Structures* majority rejected." Br. of Amici Curiae Wash. State Ass'n of Mun. Att'ys, Ass'n of Wash. Cities, & Wash. State Ass'n of Counties at 7; *see Colo. Structures*, 161 Wn.2d at 611 (Madsen, J., concurring in the dissent). In the nine years since *Colorado Structures*, the legislature has not acted contrary to our holding. Without a "'clear showing that an established rule is incorrect and harmful,'" we shall not revisit settled legal

---

certainly 'not . . . essential to [*Matsyuk*'s] determination,' and therefore relegates that footnote to *obiter dictum*." Br. of Amici Curiae Wash. State Ass'n of Mun. Att'ys, Ass'n of Wash. Cities, & Wash. State Ass'n of Counties at 6 n.2 (alterations in original) (quoting *State ex rel. Lemon v. Langlie*, 45 Wn.2d 82, 89, 273 P.2d 464 (1954)).

principles. *City of Federal Way v. Koenig*, 167 Wn.2d 341, 346, 217 P.3d 1172 (2009) (internal quotation marks omitted) (quoting *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 147, 94 P.3d 930 (2004)).

Instead, we consider first whether the existence of a statutory fee remedy enacted after our decision in *Colorado Structures* reveals an intent by the legislature to exclude all other fee remedies in public works contracts, including the equitable remedy under *Olympic Steamship* and *Colorado Structures*. For the reasons discussed below, we hold that it does not.

A. *RCW 39.04.240 is not the exclusive fee remedy in a public works contract*

Under Washington law, the prevailing party to an action for damages not exceeding $10,000 may be awarded attorney fees. RCW 4.84.250. The party seeking relief is deemed to have prevailed in the action "when the recovery, exclusive of costs, is as much as or more than the amount offered in settlement by the . . . party seeking relief." RCW 4.84.260. Service of a settlement offer must be made within a specific period of time after filing suit. RCW 4.84.280. Pursuant to RCW 39.04.240, the provisions set forth in RCW 4.84.250 through RCW 4.84.280 also apply to actions arising out of a public works contract, with revisions to the time period for serving settlement offers and removal of the $10,000 maximum.

"The legislature has the power to supersede, abrogate, or modify the common law." *Potter v. Wash. State Patrol*, 165 Wn.2d 67, 76, 196 P.3d 691

(2008). However, we will not deviate from the common law "'unless the language of a statute be clear and explicit for this purpose.'" *Id.* at 77 (internal quotation marks omitted) (quoting *Norfolk Redevelopment & Hous. Auth. v. Chesapeake & Potomac Tel. Co. of Va.*, 464 U.S. 30, 35, 104 S. Ct. 304, 78 L. Ed. 2d 29 (1983)). In determining whether a statute supersedes, abrogates, or modifies the common law, we will look to the language of the statute, whether that language contains an express statement of exclusivity, and other expressions of legislative intent. *Id.* at 80. Alternatively, legislative intent to repeal the common law may be found where "'the provisions of a . . . statute are so inconsistent with and repugnant to the prior common law that both cannot simultaneously be in force.'" *Id.* (alteration in original) (quoting *State ex rel. Madden v. Pub. Util. Dist. No. 1*, 83 Wn.2d 219, 222, 517 P.2d 585 (1973)). Therefore, in order to find that RCW 39.04.240 provides the exclusive means for recovering attorney fees in this action, we must find either that the legislature explicitly intended such exclusivity or that RCW 39.04.240 is so inconsistent with *Olympic Steamship* that they both cannot simultaneously apply.

The Sureties correctly point out that an award of fees under RCW 4.84.250-.280 as applied by RCW 39.04.240 requires that the prevailing party make a timely settlement offer. RCW 4.84.260; Sureties' Suppl. Br. at 6. However, this is a condition precedent to recovery under this statutory scheme; it does not represent a

limitation on awarding attorney fees in the context of public works contracts and insurance coverage. There is no language within either RCW 4.84.250-.280 or RCW 39.04.240 suggesting that the legislature intended to exclude all other means of recovering attorney fees. The legislature simply took an existing statutory remedy and made it available to actions arising out of a public works contract.

There is nothing in the legislative history indicating that RCW 39.04.240 was intended to proscribe alternative fee remedies. Testimony for the original bill stated quite plainly that "[t]he purpose of the bill is to encourage settlements." H.B. REP. ON ENGROSSED S.B. 6407, at 2, 52d Leg., Reg. Sess. (Wash. 1992). Because "[p]ublic agencies seem to react to litigation as if their attorneys are free," the legislature expected an award of fees to result in "decision[s] to pursue the law suit . . . on the merits of the case and not on the costs of going to court." *Id.* There is no indication that the bill was a reaction to a court decision allowing for equitable remedies, and in the final bill report for RCW 39.04.240, the legislature recognized that attorney fees may be awarded as authorized by statute, contract, *or equitable common law grounds*. FINAL B. REP. ON ENGROSSED S.B. 6407, at 1, 52d Leg., Reg. Sess. (Wash. 1992).

Seven years later, the legislature amended RCW 39.04.240 to remove the maximum pleading amount of $250,000. LAWS OF 1999, ch. 107, § 1(1). Testimony in favor of the bill pointed out that "[t]hese contracts are very one-

sided, and in cases near the $250,000 limit, the public agency has little incentive to compromise or settle now." H.B. Rep. on H.B. 1671, at 2, 56th Leg., Reg. Sess. (Wash. 1999). The legislature noted that the statute "works very well to save both sides time and money" and that removing the maximum pleading amount would "force both sides to act reasonably." *Id.* While clearly encouraging resolution of claims through settlement, there was no language indicating an intent to foreclose existing alternative equitable remedies recognized at common law.

Finally, the provisions of RCW 4.84.250-.280 are not "'so inconsistent with and repugnant to'" other available remedies as to evidence the legislature's intent for exclusivity. *Potter*, 165 Wn.2d at 77 (quoting *State ex rel. Madden v. Pub. Util. Dist. No. 1*, 83 Wn.2d 219, 222, 517 P.2d 585 (1973)). The dissent by Justice Wiggins does not distinguish between coverage disputes and claims disputes—a distinction that is critical here because each fee remedy applies to only one type of dispute or the other. While a single case may entail both a coverage and a claims dispute, there is never a situation where "both avenues of recovery are available" for the same *part* of the dispute. Dissent at 1.

An award of attorney fees under *Olympic Steamship* is restricted to disputes where the insurer forces the insured to litigate coverage and then loses. *Solnicka v. Safeco Ins. Co. of Ill.*, 93 Wn. App. 531, 533, 969 P.2d 124 (1999); *see Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 144-45, 930 P.2d 288 (1997)

(awarding fees in a dispute involving a coverage exclusion); *Estate of Jordan v. Hartford Accident & Indem. Co.*, 120 Wn.2d 490, 508, 844 P.2d 403 (1993) (awarding fees in a dispute involving the language of a fidelity bond); *Axess Int'l Ltd. v. Intercargo Ins. Co.*, 107 Wn. App. 713, 722, 30 P.3d 1 (2001) (awarding fees in a dispute involving coverage under a maritime surety bond). "Coverage questions focus on such questions as whether there is a contractual duty to pay, who is insured, the type of risk insured against, or whether an insurance contract exists at all." *Solnicka*, 93 Wn. App. at 534. In contrast, a claims dispute involves factual questions as to the extent of damages. *Id.*; *Axess*, 107 Wn. App. at 721 ("Fees are awarded under *Olympic Steamship* where the insurer unsuccessfully denies coverage, not where the insurer acknowledges coverage but disputes the value of the claim.").

By way of operation, RCW 4.84.250 does not apply to coverage disputes because such disputes are legal in nature: either there is coverage under the language of the insurance contract or bond or there is not. *See, e.g., Colo. Structures*, 161 Wn.2d at 606 ("Since the question is a legal one, which required Structures to litigate to obtain a declaratory judgment ruling regarding the meaning of the contract, it is a coverage dispute."). On the other hand, the statutory fee remedy clearly envisions a situation where the parties disagree about the *amount* owed rather than the legal question of whether performance has been triggered.

*See id.* ("This case would be in the nature of a claims dispute if [the surety] had agreed to pay under the bond, but had a factual dispute with Structures as to the amount of the payment." (emphasis omitted)). Any pretrial settlement offer by the sureties must naturally include an agreement that performance is owed, and once the parties agree that performance is owed, *Olympic Steamship* fees are no longer available.

As is often the case, many disputes involve both a coverage question and a claims question. The dissent argues that such a scenario "demonstrates that the two separate [fee remedies] are repugnant to one another and cannot apply simultaneously." Dissent at 4. However, the dissent also recognizes the appropriate mechanism for resolving this issue: "[T]he court could potentially apportion the fees between coverage and damages." *Id.* In fact, we have instructed courts to do just that when an award of attorney fees is authorized for some, but not all, of one party's claims. *Hume v. Am. Disposal Co.*, 124 Wn.2d 656, 672, 880 P.2d 988 (1994) (directing the court to segregate an award of fees when necessary); *see Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 693, 132 P.3d 115 (2006); *MP Med. Inc. v. Wegman*, 151 Wn. App. 409, 426-27, 213 P.3d 931 (2009).

Following our settled rules, the trial court in the example above would segregate the fees related to the coverage question from fees related to the amount

owed. The public body would be entitled to the former, and the surety would be entitled to the latter. The statutory fee remedy is not inconsistent with and repugnant to the fee rule in *Olympic Steamship* merely because each party receives an award of fees for different parts of the same case.

Under the facts of this case, King County opted not to include a fee provision in either the construction contract or the performance bond, both of which were drafted by King County. *See* RCW 4.84.330. As the Sureties suggest, this may have been a strategic decision to limit liability for attorney fees in the event that King County found *itself* in breach of the contract. Sureties' Suppl. Br. at 5. King County did not make an offer of settlement under RCW 39.04.240, but that too is not surprising. As mentioned above, there is very little middle ground on which to construct a settlement offer in a pure coverage dispute; King County insisted there was coverage under the bond, and the Sureties insisted there was not. Instead of performing under a reservation of rights, the Sureties compelled King County to assume the burden of legal action to obtain the benefit of the performance bond by proving that a breach had occurred. Thus, attorney fees were available under *Olympic Steamship*. 117 Wn.2d at 53.

B.    *The fees in this case could not be segregated because the Sureties adopted the contract defenses of VPFK*

The Sureties next argue that the trial court erred when it failed to segregate the fees between King County's claim against VPFK and King County's claim

15

against the Sureties. However, by adopting the entirety of VPFK's defenses against breach, the Sureties made the two claims indistinguishable. The Court of Appeals held that the trial court did not abuse its discretion in ruling that segregation was impossible. We agree.

We review the trial court's determination of whether segregation is possible for abuse of discretion. *Mayer*, 156 Wn.2d at 693. The trial court abuses its discretion "'when its exercise of discretion is manifestly unreasonable or based upon untenable grounds or reasons.'" *Allard v. First Interstate Bank of Wash., NA*, 112 Wn.2d 145, 148, 768 P.2d 998, 773 P.2d 420 (1989) (quoting *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 77, 684 P.2d 692 (1984)). "If . . . an attorney fees recovery is authorized for only some of the claims, the attorney fees award must properly reflect a segregation of the time spent on issues for which attorney fees are authorized from time spent on other issues." *Hume*, 124 Wn.2d at 672. However, segregation of fees is not necessary where "the trial court finds the claims to be so related that no reasonable segregation of successful and unsuccessful claims can be made." *Id.* at 673.

The Sureties argue that King County's lawsuit involved a claims dispute, not a coverage dispute, and was separate from the cause of action against VPFK. Sureties' Suppl. Br. at 19. We find the Sureties' argument unpersuasive against the weight of the record before us. Prior to litigation, the Sureties asserted that

"the County's handling of the Project deprived the Co-Sureties of their rights, thereby prejudicing them and *barring claims* on the Bond." Ex. 162, at 20 (emphasis added). The Sureties further declared as follows: "VPFK is not in default of its contract obligations and the County has not performed its obligations thereunder. Accordingly, the County's claim is respectfully denied. All rights and defenses are fully reserved." *Id.* at 20-21. At trial, the court found that the Sureties "adopted all of VPFK's defenses in this case, including claims for various differing site condition . . . claims, which, if proved in their entirety, would defeat King County's claim of default." CP at 4489. Finally, the Sureties admitted that they had ultimately made the decision to deny *coverage* under the bond. Certified Tr. (Mar. 22, 2013) at 77. Clearly, the Sureties were not debating the amount owed under the performance bond—rather, the Sureties took the position that performance under the bond had not been triggered because no default had occurred.

Of course, it is not difficult to understand the litigation strategy at play here. Successful defense of the breach claim against VPFK meant that the Sureties would not be called on to perform under the bond. Although the Sureties suggest they "played no meaningful role in the lengthy trial," Sureties' Suppl. Br. at 19, the trial court's findings in fact suggest that the Sureties vigorously worked to defeat King County's claims against VPFK. *See* CP at 4487. Additionally, the Sureties

17

retained five different experts to buttress VPFK's contract defenses dealing with scheduling and productivity, geological conditions, mechanical tunneling and mining, and mud and slurry issues. The Sureties joined with VPFK in requesting jury instructions linking liability under the bond to a finding that VPFK was liable for King County's damages. And defense counsel in closing argument reasserted that the Sureties' panel of expert consultants "confirmed what VPFK had been saying all along, that there was no default." Verbatim Report of Proceedings (Dec. 6, 2012) at 7022.

King County could prevail in asserting coverage under the performance bond only by defeating VPFK's defenses against breach, and the Sureties threw their considerable legal weight behind these defenses. While the Sureties' litigation strategy was sensible, it resulted in the claims becoming inseparable. As the trial court correctly noted, the issues of breach and coverage under the bond shared a "common core of facts." CP at 4529; *see Fiore v. PPG Indus., Inc.*, 169 Wn. App. 325, 352, 279 P.3d 972 (2012). The jury instructions squarely presented the claims against VPFK and the Sureties together. When attorneys for King County prepared to argue the issue of breach, they had to contend not just with counterarguments from VPFK but from the Sureties as well. Accordingly, the trial court did not abuse its discretion in finding that the attorney fees could not be segregated.

CONCLUSION

This court has previously held that the rule in *Olympic Steamship* applies to performance bonds in the surety context. Although a statutory fee provision exists for public works contracts under RCW 39.04.240, we hold that it is not the exclusive fee remedy available. Furthermore, the trial court properly determined that segregation of the fees was impossible. Accordingly, we affirm the Court of Appeals.

_____ Ju, J.

WE CONCUR:

_____ Fairhurst, C.J.

_____ Stephens, J.

_____ Johnson, J.

_____ González, J.

_____ Owens, J.

_____

No. 92744-8

WIGGINS, J. (dissenting)—The legislature provided a clear and comprehensive statute for recovering attorney fees in public works contract disputes. The statute, RCW 39.04.240, explicitly seeks to encourage settlement by requiring all parties to make and improve on a settlement offer before they may recover attorney fees. This legislative scheme is "inconsistent with and repugnant to" the equitable ground for awarding fees under *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991); if both avenues for recovery are available, then public entities are free to disregard the statute's dictates. *State ex rel. Madden v. Pub. Util. Dist. No. 1*, 83 Wn.2d 219, 222, 517 P.2d 585 (1973). As a result, the statute plainly preempts *Olympic Steamship*, providing the exclusive remedy for recovery of attorney fees in public works contract disputes. Therefore, I respectfully dissent.

RCW 39.04.240 Is the Exclusive Remedy

The majority sets out the proper test for determining whether a statute abrogates prior common law, but then applies it improperly. We must (1) find explicit legislative intent that a statute be the exclusive remedy or (2) determine that a statute is so inconsistent with prior common law that both cannot simultaneously apply. *See* majority at 9-10; RCW 39.04.240.

RCW 39.04.240 establishes a process for awarding attorney fees to the prevailing party in a public works contract. The statute adopts the award process found in RCW 4.84.250 through 4.84.280, and removes the limit on damages found in those

statutes. RCW 39.04.240(1). It incorporates the requirement that "in any action for damages . . . there shall be taxed and allowed to the prevailing party as a part of the costs of the action a reasonable amount to be fixed by the court as attorneys' fees." RCW 4.84.250.

A plaintiff is the prevailing party when he or she recovers as much as or more than the amount that the plaintiff offered in settlement. RCW 4.84.260. A defendant is the prevailing party when the plaintiff recovers as much as or less than the amount that the defendant offered in settlement. RCW 4.84.270. Thus, the statutes require both plaintiffs and defendants to make and improve on settlement offers before they may recover attorney fees.

Parties may not contract around these requirements. "The rights provided for . . . may not be waived by the parties to a public works contract . . . , and a provision in such a contract that provides for waiver of these rights is void as against public policy." RCW 39.04.240(2).

*Inconsistency with Prior Common Law*

"When determining whether a statute is exclusive, the court should strive to uphold the purpose of the statute." *Potter v. Wash. State Patrol*, 165 Wn.2d 67, 87, 196 P.3d 691 (2008). "To determine legislative intent, we look first to the language of the statute." *State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002). We may also use principles of statutory construction and legislative history to help in our interpretation. *Id.* at 955; *see also Potter*, 165 Wn.2d at 88 (examining legislative history to determine whether it would frustrate the legislative purpose of the statute if

2

we allowed the common law action to proceed). "Where . . . the provisions of a later statute are so inconsistent with and repugnant to the prior common law that both cannot simultaneously be in force, the statute will be deemed to abrogate the common law." *State ex rel. Madden*, 83 Wn.2d at 222.

1. Statutory Language

The statutory language here is inconsistent with and repugnant to *Olympic Steamship*. The statute and *Olympic Steamship* define a "prevailing party" in fundamentally different ways. The statute also prohibits parties from contracting around its requirements. As a result, both cannot be in force simultaneously.

As discussed above, RCW 39.04.240 requires prevailing parties both to make a settlement offer and to then improve on the offer. To prevail, a plaintiff must recover the same as or more than his or her settlement offer. RCW 4.84.260. A defendant may prevail only when the plaintiff recovers the same as or less than the defendant's settlement offer. RCW 4.84.270. Parties may not waive these requirements. RCW 39.04.240(2).

*Olympic Steamship* has none of these requirements. *Olympic Steamship* defines a "prevailing party" as a party who wins a lawsuit, when that lawsuit is forced by an insurer's refusal "to defend or pay the . . . claim." *Olympic S.S.*, 117 Wn.2d at 52-53 (holding "that an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue"). *Colo. Structures, Inc. v. Ins. Co. of W.*, 161 Wn.2d 577, 601, 167 P.3d 1125 (2007)

3

(plurality opinion),[1] expanded the "prevailing party" definition to a party who wins a lawsuit when "the surety wrongfully denies coverage."

These inconsistent definitions cannot be in force simultaneously, especially in light of the statutory prohibition on waiver of the statutory requirements. To adopt the majority's conclusion to the contrary would lead to absurd results. For example, under the majority approach, both parties can be "prevailing parties." If a public body prevails on a coverage dispute and recovers a modest award against a surety, *Olympic Steamship* would entitle the public entity to attorney fees. But, if the surety made a timely pretrial settlement offer that exceeded the recovery by the public entity, RCW 39.04.240 entitles the surety to attorney fees. To resolve this conflict, the court could potentially apportion the fees between coverage and damages. But RCW 4.84.250 through 4.84.280 have no language contemplating such a split. And, in circumstances like those presented here, where the trial court finds that the fees cannot be segregated,[2] what is the court to do? Regardless of the potential solutions, the example demonstrates that the two separate definitions are repugnant to one another and cannot apply simultaneously.

The majority claims that distinguishing between coverage disputes and claims disputes is critical here. Majority at 12. However, the majority ignores that coverage

---

[1] We agree with the majority that *Colorado Structures* should not be overruled. *See* majority at 7-9. In *Colorado Structures*, all parties involved were private parties. 161 Wn.2d at 581. In contrast, RCW 39.04.240 applies only when a public entity is a party. RCW 39.04.240 ("The provisions . . . shall apply to an action arising out of a public works contract in which the state or a municipality, or other public body that contracts for public works, is a party . . . .").

[2] *See* majority at 14.

4

disputes are not merely abstract questions; instead, they are brought to determine how much money an insurance company owes.

RCW 4.84.250 permits recovery of attorney fees "in any action for damages." *See* RCW 39.04.240 (incorporating RCW 4.84.250's scheme by reference). Therefore, the question is whether a claim for coverage is part of establishing an action for damages for purposes of the statute. Absent context, a claim for establishing coverage does not obviously seek damages but simply the resolution of a binary question: Does coverage exist or not? Yet, this approach ignores the obvious and inevitable goal of a coverage claim, which is to recover a dollar amount as a result of coverage. Ultimately, a claim for coverage is an action for damages, thereby falling within the statute's scope.

The practical connection between coverage and damages is especially clear in this case: King County sought to prove that VPFK was in default under the contract, that coverage by the sureties was thus established, and that the sureties were therefore required "'to pay King County's costs and expenses incurred because of VPFK's default.'" Majority at 5 (quoting Clerk's Papers at 9091). King County sought *costs and expenses* at trial; coverage was simply a necessary precursor toward that end. Either party could make settlement offers in advance based on a monetary amount.

We can also see how the statute would apply to possible settlement offers in this case. Ultimately, the jury awarded King County close to $130 million. The fee recovery statute would simply require that this total meet or exceed whatever

5

settlement amount was previously offered. Because there is no evidence that King County made any settlement offer, there was nothing to meet or exceed. Thus, King County is not entitled to recover fees under the statute. This approach acknowledges the goals of coverage claims and the intent of the statute.

Even if we acknowledge that coverage and damages are two different issues, here, they have been so "intertwined" as to be "indistinguishable." Majority at 5. King County took the position—and prevailed—that coverage and determination of claims were so interwoven in this case that King County should recover all its fees, not just the fees incurred in establishing coverage. It is not clear why combining a coverage question with a claim for damages results in the entire claim being treated as a coverage question. The reason for favoring the case's treatment as a coverage question is especially unclear in light of the statute's express purpose to encourage settlement. All one has to do to avoid the statute's requirements is to raise a coverage issue as part of a claim for damages; then, the public entity is free of any settlement requirements. Far from a strict program to require reasonable efforts at settlement in order to recover fees, the majority turns the statute into an optional and uninviting alternative.

2. Principles of Statutory Construction

Our principles of statutory construction also compel the conclusion that RCW 39.04.240 abrogates *Olympic Steamship* in the public works context. First, since the statute and *Olympic Steamship* both govern an award of attorney fees and are in conflict with one another, we should construe the more specific statute as prevailing

6

over the more general common law. Second, we may not grant the equitable award of *Olympic Steamship* fees when there is a conflicting statutory method for recovery.

We construe specific statutes as prevailing over general statutes. *O.S.T. v. Regence BlueShield,* 181 Wn.2d 691, 701, 335 P.3d 416 (2014). We apply this rule of statutory construction when we conclude that the statutes concern the same subject matter and "conflict to the extent they cannot be harmonized." *Id.* Here, both RCW 39.04.240 and *Olympic Steamship* govern an award of attorneys' fees. Their methods for allowing an award of fees conflict and "cannot be harmonized." *Id.* As a result, we should construe the more specific statute, RCW 39.04.240, as prevailing over the more general case law, *Olympic Steamship*.

In addition, we will "not give relief on equitable grounds in contravention of a statutory requirement." *Longview Fibre Co. v. Cowlitz County,* 114 Wn.2d 691, 699, 790 P.2d 149 (1990);[3] *see also Stephanus v. Anderson,* 26 Wn. App. 326, 334, 613 P.2d 533 (1980) ("Equity, however, also follows the law and cannot provide a remedy where legislation expressly denies it."). RCW 39.04.240 clearly establishes the method for awarding attorney fees in public works contract disputes. *Olympic Steamship*, on the other hand, is an equitable remedy. As a result, the court cannot award equitable fees to King County under *Olympic Steamship* in contravention of RCW 39.04.240's requirements.

---

[3] *See also Williams v. Duke,* 125 Wash. 250, 254, 215 P. 372 (1923) ( "'[W]herever the rights or the situation of the parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation.'" (quoting *Magniac v. Thomson,* 56 U.S. (15 How.) 281, 299, 14. L. Ed. 696 (1853)).

Nor should King County's equity arguments overcome the statute's dictates. It matters not that the majority believes that the statute's requirements are inconvenient in these circumstances. *See* majority at 15 ("As mentioned above, there is very little middle ground on which to construct a settlement offer in a pure coverage dispute."). We are not permitted to render the statute meaningless for public entities, even if we find its effects problematic. *See Williams*, 125 Wash. at 253 (noting that we may not allow a party to "invoke[] the aid of equity to relieve [it] from the force of the statutory rule"). The legislature deliberately imposed the offer of settlement requirement on all parties to public works contracts. The proper recourse for public entities seeking a way around that requirement is to seek an exemption from the legislature. *Longview Fibre Co.*, 114 Wn.2d at 699 ("Concerns over the efficacy of the statute are properly addressed to the Legislature.").

The majority's reliance on policy justifications to preserve our common law is also misplaced. *See* majority at 16. It is the legislature's role to weigh competing policy interests. It did so here. Testimony offered to the legislature emphasized the policy considerations of trial efficiency and avoiding lengthy litigation. *See* H.B. REP. ON ENGROSSED S.B. 6407, at 2, 52d Leg., Reg. Sess. (Wash. 1992); *see also* H.B. REP. ON SUBSTITUTE H.B. 1671, at 2, 56th Leg., Reg. Sess. (Wash. 1999) (testimony that "[t]he offer-of-settlement statute works very well to save both sides time and money"). We cannot substitute the legislature's judgment with our own on this subject. *State v. Smith*, 93 Wn.2d 329, 337, 610 P.2d 869 (1980) ("The legislature represents the people when it determines that a law is necessary, wise, or desirable, and the court is

8

not empowered to substitute its judgment for that of the legislature."). As a result, we must conclude that *Olympic Steamship* is abrogated in these circumstances.

### 3. Legislative History

Legislative history further demonstrates that the statute and *Olympic Steamship* are inconsistent with one another. Our "primary objective [when interpreting statutes] is to ascertain and give effect to the intent and purpose of the Legislature." *Watson*, 146 Wn.2d at 954. This court may examine legislative history when interpreting what a statute means. *Id.*

Here, as the majority acknowledges, the purpose of RCW 39.04.240 "'is to encourage settlements.'" Majority at 11 (quoting H.B. REP. ON ENGROSSED S.B. 6407, at 2. Testimony before the legislature noted that "[p]ublic agencies seem to react to litigation as if their attorneys are free," wasting public funds. H.B. REP. ON ENGROSSED S.B. 6407, at 2. RCW 39.04.240 would encourage settlement by requiring all parties, especially public entities, in all public works contract disputes to make an offer of settlement and improve on it at trial. *See* H.B. REP. ON SUBSTITUTE H.B. 1671, at 2 (testimony that "[t]hese contracts are very one sided" and "the public agency has little incentive to compromise or settle now"). This condition of recovery created "a two-edged sword that will force both sides to act reasonably." *Id.*

But the majority, by preserving the common law avenue of recovery, effectively negates the legislature's incentive scheme. If a public entity may still recover its attorney fees without making and improving on an offer of settlement, there is no incentive for public agencies to seek fees under the statute's provisions. Instead, the

statute "will become a 'white elephant remedy' that 'few, if any, [public entities] would choose to invoke.'" *Wash. Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847, 855-56, 774 P.2d 1199 (1989). Contrary to explicit legislative intent, the majority provides public entities with a back door to escape the statute's requirements.

Conclusion

RCW 39.04.240 "would accomplish little [to change the behavior of public entities] if it were a measure plaintiffs could choose or refuse to abide at their pleasure." *Id.* Because the legislature intended the statute to encourage public entities to make reasonable settlement offers, the prior common law of *Olympic Steamship* allowing the recovery of fees without an offer of settlement is too inconsistent to apply simultaneously with the statute. We must consider the common law abrogated in these circumstances.[4]

For these reasons, I respectfully dissent.

---

[4] Since *Olympic Steamship* fees are not available, the question of whether the fees could be segregated becomes moot, and we need not address it. *See* majority at 16-20.

*King County v. Vinci Constr. Grands Projets/Parsons RCI/*
*Frontier-Kemper, JV,* No. 92744-8
(Wiggins, J., dissenting)

_Wiggins, J._

No. 92744-8

MADSEN, J. (concurring in dissent)—I concur with the dissent that a fee award under *Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991), would undermine the statutory scheme for fees arising out of a public works contract found in RCW 39.04.240. Dissent at 1. I write separately because I would also hold that we should not extend *Olympic Steamship* fees to construction performance bonds. Contrary to the majority's recitation, there is no precedential opinion from this court that has held that such fees extend to this type of case. With no binding precedent, I would decline the extension sought. Extending *Olympia Steamship* fees to construction performance bonds is inappropriate because such bonds are fundamentally different from casualty insurance policies. Therefore, I respectfully dissent.

The majority purports to be following precedent in allowing *Olympic Steamship* fees in this case involving construction performance bonds, but the case that the majority relies on, *Colo. Structures, Inc. v. Ins. Co. of W.*, 161 Wn.2d 577, 167 P.3d 1125 (2007) (plurality opinion), did not create binding precedent. Indeed, *Colorado Structures* was a decision with only four justices signing the lead opinion. The fractured opinion in *Colorado Structures* is similar to that in *State v. Rhone*, 168 Wn.2d 645, 229 P.3d 752

(2010) (plurality opinion). In that case too, the separate concurrence expressed its desired resolution of the case and opined how it would resolve future cases. *Id.* at 658. We subsequently held that the dicta relating to future cases had no precedential value because it did not relate to the disposition of *Rhone*. *State v. Meredith*, 178 Wn.2d 180, 184, 306 P.3d 942 (2013). Thus, *Rhone* stands for the proposition that if a separate opinion does not concur in the judgment, any language expressing how the law should be applied in future cases cannot be considered part of the court's holding because that language is not necessary to the resolution in the case and is thus dicta.

*Rhone* is consistent with the federal rule. Under that rule, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members *who concurred in the judgments* on the narrowest grounds.'" *Marks v. United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977) (emphasis added) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976) (plurality opinion)). In *Colorado Structures*, the plurality extended the availability of *Olympic Steamship* fees to cases involving surety bonds. 161 Wn.2d at 582. The plurality reasoned that surety bonds are "'in the nature'" of insurance contracts, thus there was little to distinguish construction performance bonds from other forms of insurance. *Id.* at 598, 605 (quoting *Nat'l Bank of Wash. v. Equity Inv'rs*, 86 Wn.2d 545, 553, 546 P.2d 440 (1976)). The present majority concludes that the extension of attorney fees had majority support in *Colorado Structures* because of Justice Sanders' separate

2

opinion. Majority at 7-8. In his opinion, Justice Sanders stated that although he disagreed that it would apply in that case, he agreed that *Olympic Steamship* applies to surety bonds and would reward attorney fees to a prevailing contactor. *Colo. Structures*, 161 Wn.2d at 638 (Sanders, J., dissenting).

But Justice Sanders did not concur in the judgment of the plurality; he dissented. Under *Marks*, the "holding" of the court is the narrowest position agreed to by at least five justices concurring in the judgment. Justice Sanders did not concur in the judgment in *Colorado Structures*. Therefore, even though his dissenting opinion contains dicta regarding attorney fees, there was not a binding holding of this court on that issue.

I acknowledge that our jurisprudence has been less than clear on how to determine what, if any, legal principles from a fractured opinion are precedential. *Compare Meredith*, 178 Wn.2d at 184, *with In re Pers. Restraint of Francis*, 170 Wn.2d 517, 532 n.7, 242 P.3d 866 (2010) ("When there is no majority opinion, the holding is the narrowest ground upon which a majority agreed."). We have explicitly applied *Marks* only when evaluating split opinions from the United States Supreme Court. *See, e.g., State v. LG Elecs., Inc.*, 186 Wn.2d 169, 181, 375 P.3d 1035 (2016). Without explicitly adopting *Marks*, however, we have applied it. This case provides an opportunity for us to end an era of confusion about what constitutes precedent from our fractured opinions and make clear that we follow the federal *Marks* standard. Accordingly, I would hold that *Colorado Structures* produced no binding holding as to attorney fees. Not bound by

3

precedent, we should decline to extend the availability of *Olympic Steamship* fees to sureties on a performance bond.

*Olympic Steamship* was a departure from the normal rule governing attorney fees, and we should be slow to extend it. Under the "American rule," litigants pay their own attorney fees unless a statute or contract provides otherwise. *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 133 S. Ct. 1166, 1175, 185 L. Ed. 2d 242 (2013) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253, 130 S. Ct. 2149, 176 L. Ed. 2d 998 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 683, 103 S. Ct. 3274, 77 L. Ed. 2d 938 (1983))). *Olympic Steamship* fees are an equitable remedy; in that case, we extended the right of an insured to recoup attorney fees because of the disparity in bargaining power between an insurance company and its policyholder, which is substantially different from other commercial contracts. 117 Wn.2d at 52. The extension of fees in *Olympic Steamship* was a substantial departure from the American rule that generally governs attorney's fees. And without the showing of unequal bargaining power like we had in *Olympic Steamship*, we should not depart further from the American rule.

There are critical differences between suretyship and insurance that illustrate why we should not extend equitable fees to surety bonds. Our decision in *Olympic Steamship* was based on the disparity of bargaining power between insurers and those seeking coverage. 117 Wn.2d at 52-53. With casualty insurance, a consumer must generally accept insurance on a "take it or leave it" basis. In the context of construction performance bonds, however, the obligee on a performance bond (the owner of a

4

construction project) has the power to dictate the terms of the bonds. Therefore, the disparity between the parties in bargaining power and sophistication in the context of construction performance bonds is not similar to that found in the insurance context. *Colo. Structures*, 161 Wn.2d at 621-22 (Madsen, J., concurring in dissent) ("'Inequities in bargaining power are largely absent in the surety context because the obligee, not the surety, usually dictates the bond requirements.'" (quoting *Masterclean, Inc. v. Star Ins. Co.*, 347 S.C. 405, 412, 556 S.E.2d 371 (2001)); *Blackfeet Tribe v. Blaze Constr. Inc.*, 108 F. Supp. 2d 1122, 1142 (D. Mont. 2000) (finding that the parties were not in inherently unequal bargaining positions); *Cates Construction, Inc. v. Talbot Partners*, 21 Cal. 4th 28, 53, 980 P.2d 407, 86 Cal. Rptr. 2d 855 (Cal. 1999) (concluding that "[p]erformance . . . bonds do not reflect the . . . unequal bargaining power that [is] inherent in insurance policies"); *Great Am. Ins. Co. v. Gen. Builders, Inc.*, 113 Nev. 346, 934 P.2d 257 (1997) (no inherent inequality in bargaining power between a performance bond obligee and a surety); *Transamerica Premier Ins. Co. v. Brighton Sch. Dist. 27J*, 940 P.2d 348, 353 (Colo. 1997) (admitting that the parties to a suretyship contract are on "equal footing" when entering into the agreement); *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 418 (Tex. 1995) (noting that it is the obligee, not the surety, that controls the form of the bond and the terms of the incorporated contract)).

Further, the public policy rationales that supported an equitable remedy in *Olympic Steamship* are absent in the context of performance bonds. In a typical insurance claim, the insured depends on a prompt payout for the basic necessities of life.

5

For a performance bond, on the other hand, "an obligee relies on the surety for additional security to ensure the fulfillment of a commercial contract." *Colo. Structures*, 161 Wn.2d at 623 (Madsen, J., concurring in dissent). When a surety breaches, there is no different dilemma for the obligee than that posed by the principal's default on the underlying construction contract. *Id.* (quoting *Cates*, 21 Cal. 4th at 55). An obligee also has other avenues of recourse. An insured is limited to seeking help from its insurer. But in a surety bond, an obligee has recourse against the principal and the surety. *Id.* at 624 (Madsen, J., concurring in dissent). Public policy simply does not require the same equitable remedies to be available for construction performance bonds as those in individual insurance claims.

As Chief Justice Alexander argued in *Colorado Structures*, we should be slow to extend the *Olympic Steamship* exception to the American Rule, particularly in cases where the reasons underlying that opinion are not present. 161 Wn.2d at 610 (Alexander, C.J., concurring/dissenting). Given the purpose and nature of the relationship in a suretyship agreement, it is inappropriate to extend an equitable exception to the American rule. By mistakenly believing that *Colorado Structures* created binding precedent on this issue, the majority fails to evaluate it fully.

Accordingly, I respectfully dissent.

6

_____Madsen, J._____

George McCloud, Jr.